Filed 2/21/23 P. v. Smith CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KENNETH SMITH,<br><br>Defendant and Respondent. | F083730<br><br>(Super. Ct. No. PCF325119)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County. Juliet L. Boccone, Judge.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Heather S. Gimle, Deputy Attorneys General, for Plaintiff and Appellant.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

## INTRODUCTION

Kenneth Smith (respondent) is currently awaiting trial on special circumstances murder charges. This appeal is taken by the People (appellant) from the trial court's order granting respondent's pretrial motion to recuse the entire Tulare County District Attorney's Office (District Attorney's Office) pursuant to Penal Code section 1424.[1]

Appellant contends the trial court abused its discretion in granting recusal without finding an actual conflict of interest. We agree. We conclude the trial court relied on an incorrect legal standard in granting recusal, and that its ruling was not supported by the evidence. We reverse.

## BACKGROUND

In 2019, the District Attorney's Office filed an information charging respondent with two counts of murder (§ 187, subd. (a)) with a multiple murder special circumstance alleged as to each count. (§ 190.2, subd. (a)(3).) Respondent is awaiting trial on the above charges. We need not discuss the underlying facts as they are not relevant to the issues raised on appeal.

The matter was set for jury trial on July 12, 2021. On July 7, 2021, respondent filed a motion to recuse the entire District Attorney's Office pursuant to section 1424. In the motion, defense counsel stated the District Attorney's Office recently produced through discovery a disk containing 20 audio recordings of respondent's jail calls. The calls occurred between November 3, 2018, and November 3, 2020. The seventh call, which was six minutes and 18 seconds long, was a recording of a jail call between respondent and defense counsel. Defense counsel stated that the prosecution informed her sometime before a June 17, 2021, pretrial hearing that jail calls would soon be provided. After learning of the jail calls, she met twice with Erica Gonzalez, the deputy district attorney assigned to respondent's case, but claimed Gonzalez "remained silent

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2.

regarding the content or any issue regarding said jail calls." Based on this, defense counsel alleged the District Attorney's Office had a conflict of interest and must be recused because the office inadvertently received a privileged communication, and because Gonzalez committed misconduct by failing to inform the defense of the breach.

In its written opposition, the District Attorney's Office explained that a law clerk inadvertently listened to the jail call while reviewing respondent's jail calls provided by the jail. In an attached declaration, the law clerk stated the conversation in the jail call "was so general" that she was not sure it was a conversation between respondent and his attorney. Nevertheless, after listening to the call she informed Gonzalez it "may be a conversation with [respondent's] attorneys, but [she] was unsure." She did not disclose the contents of the call to Gonzalez.

Gonzalez also submitted a declaration stating she did not listen to the call and that the law clerk did not inform her of the contents of the call. After speaking to the law clerk, she "consulted with other attorneys in [her] office who advised [her] to not listen to the call and turn over all jail calls to defense counsel," which she did.

At the hearing on the recusal motion, defense counsel conceded the breach of attorney-client privilege by the prosecution was "fully inadvertent." However, she contended recusal was still required because Gonzalez did not immediately advise defense counsel of the breach. Defense counsel alleged that when she learned of the calls, she asked Gonzalez if "this [is] something that I need to be worried about," or if they could confirm the upcoming trial date. According to defense counsel, Gonzalez replied that the calls were "irrelevant," and that they could confirm.

Gonzalez responded that she did not review the jail calls immediately after she received them. Three weeks before trial she assigned the law clerk to review the jail calls because she was busy preparing for trial and with her other responsibilities in the office. After the law clerk told her about the privileged jail call, she "consulted with other attorneys in the office," and was told "you follow [section 1054], you copy it and you

3.

turn it over to defense." She followed this advice and turned over all the jail calls. She also confirmed that the law clerk has not worked on respondent's case other than listening to the jail calls.

Gonzalez denied telling defense counsel there was "nothing to be concerned about" in the jail calls. Instead, she claimed she only told defense counsel she was not "planning to use … the calls" at trial. However, Gonzalez confirmed that she did not tell defense counsel there was a potential conversation between defense counsel and respondent, stating she was "unaware of any duty that requires me to let defense counsel know, other than turning over discovery."

The trial court granted the recusal motion. It explained its reasoning as follows:

> "[U]ltimately I believe that with the attorney/client privilege is such a high—highly held right of the defendant and the fact that you had access, not intentionally, I'm not finding any fault as far as the People, I don't think anything was done intentionally, but I do find that the fact that your office has had access to that conversation, I am going to recuse your office based on that.

> "So I just think in abundance of caution I think for [respondent] to get a fair trial I think that's the best way to go. Since I don't have a full understanding of exactly how much has been communicated to whom. So I—as I said, like I said, I'm not finding fault with anybody. I would hope that maybe the DA's office would follow-up with the Sheriff's Department so this doesn't happen again, just because it's such a crucial thing."

The District Attorney's Office filed a motion for reconsideration based on respondent's failure to properly serve the Attorney General with its recusal motion in accordance with section 1424, subdivision (a)(1). The trial court granted the motion.

The Attorney General filed a written opposition to the recusal motion arguing there is no officewide conflict because no one listened to the call other than the law clerk, and the law clerk did not share the contents of the call with anyone. Addressing the trial court's concern that it did not have a "full understanding of exactly how much has been communicated to whom," the Attorney General noted that section 1424 gives the trial

4.

court discretion to hold an evidentiary hearing. The Attorney General also argued that an "ethical wall" around the law clerk would be sufficient to ensure respondent's fair treatment, and therefore respondent has failed to demonstrate a reasonable likelihood of unfair treatment by the rest of the District Attorney's Office.

At the next hearing on the recusal motion, the Deputy Attorney General began by arguing that Gonzalez has no conflict of interest in this case because "the evidence before the Court is that Ms. Gonzalez did not hear the call[,] [s]he was not made aware of the content of the call[,] [t]here were no notes taken by the intern[,] [and] [t]here was no dissemination of this call within the District Attorney's Office." The court asked the Deputy Attorney General, "What about the fact that the District Attorney's Office turned over the discovery—the voluminous discovery without any indication there was a problem contained therein?" The Deputy Attorney General responded that "[t]here may be a criticism by the Court or counsel how that was [handled], but that's not indicative that [Gonzalez] has a conflict." The court asked if the District Attorney's Office's conduct gave the appearance that they "wanted to gloss over it," and "by turning it over in a big group, hop[ed] it wouldn't be found." The Deputy Attorney General replied that the court's concern was speculation, and there is no basis to conclude Gonzalez has a conflict of interest or did anything unethical. The court then stated, "What if she thought it had been removed and turned over to the [defense] and found out it wasn't removed and said 'Now we have to tell them.' I'm not saying that's what happened. I'm saying that if the appearance of a conflict is there, I can easily see [the] appellate court saying she shouldn't be the prosecutor." The Deputy Attorney General responded that because Gonzalez did not gain any information from the jail call, "then really what we're looking at is just critiquing how it was handled, but that doesn't indicate that she actually has a conflict of interest in this case."

The trial court continued the matter to issue a ruling. At the ensuing hearing, the court again granted the recusal motion, explaining its reasoning on the record as follows:

5.

"The problem the Court has with the DA's office handling this case is that on the hearing on the 26th of August, Miss Gonzale[z] represented that she had—she had been busy. Her law clerk had listened to the tapes and found out in June that there was a tape that was an attorney-client phone call that should not have been entered. And so subsequently what she did was talk to other people in the District Attorney's office as to what they thought that she should do. They said oh, just turn it over just like regular discovery.

"Then it was ultimately discovered. Then it was only brought up, I believe, after the trial date, which was in July. The problem that I have with that is that is not the appropriate way to handle something of this nature. Something of this nature, as the cases have demonstrated, should be handled immediately by notifying the opposing counsel that this has occurred. By having the whole staff thinking it's okay to just produce it as regular discovery in a 20-hour discovery lapse, without pointing out the fact that there is an attorney-client conversation that has been intercepted and recorded, to me is inappropriate. And I think if the office thinks that's acceptable, that they should be recused, because I don't believe that [respondent] can get a fair trial from an office that doesn't believe that that's such a crucial function of the system, that it should be just rolled over on.

"Even in [Brady,][2] I've had many times where the District Attorney will say I have [Brady] discovery for you, identifying it as [Brady] discovery. This was an interception of an attorney-client phone call that was not identified separately, but just merely included in a mass of other calls. And so that's why I am still finding that recusal of the District Attorney's office is appropriate."

## DISCUSSION

I.     **The Trial Court Abused its Discretion in Recusing the District Attorney's Office.**

The trial court initially recused the District Attorney's Office out of an "abundance of caution" that the inadvertent receipt of the privileged jail call gave rise to a conflict of interest. Upon reconsideration, the trial court concluded recusal was still appropriate based on Gonzalez's failure to immediately inform defense counsel that the District

---

**2**     It appears the trial court was citing *Brady v. Maryland* (1963) 373 U.S. 83.

6.

Attorney's Office had come into possession of the call. We conclude that in both instances, the trial court did not apply the correct legal standard. Moreover, the record does not establish Gonzalez has a disqualifying conflict of interest, nor that any such conflict extends to the entire District Attorney's Office.

### A. Applicable legal standards

#### 1. Recusal Standard

Section 1424, subdivision (a)(1), sets forth the legal standard for the recusal of a prosecutor: "The motion may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial."

Under this standard, the court must apply " 'a two-part test: "(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?" ' " (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) "Under the first part, a court must determine whether a conflict exists, that is, whether 'the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner.' [Citations.] If such a conflict exists, the court must further determine whether the conflict is ' " 'so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.' " ' [Citation.] Thus, the first half of the inquiry asks only whether a 'reasonable possibility' of less than impartial treatment exists, while the second half of the inquiry asks whether any such possibility is so great that it is more likely than not the defendant will be treated unfairly during some portion of the criminal proceedings." (*Id.* at p. 713.)

#### 2. Standard of Review

"We uniformly have held that a motion to recuse is directed to the sound discretion of the trial court, and its decision to grant or deny the motion is reviewed only for an abuse of discretion. [Citations.] The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling

7.

under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at pp. 711–712, fns. omitted.)

### B.    Recusal of the assigned deputy district attorney

#### 1.    *Initial Ruling*

The trial court's initial ruling granting the motion to recuse was based on the fact that the District Attorney's Office "had access" to the privileged jail call. The court explained it was making the order "in abundance of caution" to ensure respondent would "get a fair trial."

This is not the correct legal standard. There is no authority mandating vicarious disqualification within a district attorney's office due to the receipt of confidential information. (*People v. Lopez* (1984) 155 Cal.App.3d 813, 826–827.) The applicable recusal standard is the same in this context as it is for any other section 1424 claim. (*People v. Lopez*, *supra*, 155 Cal.App.3d at p. 827.) Moreover, our high court has made clear that section 1424 "demands a showing of a real, not merely apparent, potential for unfair treatment, and further requires that that potential 'rise to the level of a *likelihood* of unfairness.' " (*People v. Vasquez* (2006) 39 Cal.4th 47, 56.) Indeed, "[o]nly an *actual likelihood of unfair treatment*, not a subjective perception of impropriety, can warrant a court's taking the significant step of recusing an individual prosecutor or prosecutor's office." (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 719.) In granting recusal out of an "abundance of caution," the trial court merely speculated it may be possible respondent might not receive a fair trial. It did not make the necessary finding, based on the evidence in the record, that respondent was unlikely to receive a fair trial because of the inadvertent disclosure.

The trial court's error was compounded by its failure to develop a complete factual record. When issuing its ruling, the trial court noted it was acting "in abundance of

8.

caution" because it did not "have a full understanding of exactly how much has been communicated and to whom." However, section 1424, subdivision (a)(1), authorizes both parties to file affidavits, and states the court "shall review the affidavits and determine whether or not an evidentiary hearing is necessary." (§ 1424, subd. (a)(1); see also *Packer v. Superior Court* (2014) 60 Cal.4th 695, 698.) The subdivision then specifies that "the motion may not be granted unless the *evidence* shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial. (§ 1424, subd. (a)(1), italics added.) In addressing the trial court's concern about its understanding of the facts, the Attorney General noted the trial court may hold an evidentiary hearing if needed prior to ruling.

Despite this, the trial court did not hold an evidentiary hearing. As a result, the only evidence in the record regarding the handling of the confidential jail call was the affidavits submitted by the District Attorney's Office. These affidavits made clear that the only person who listened to the recording was the law clerk, and that no one else in the District Attorney's Office listened to the call or was aware of its contents. Gonzalez also specified on the record that the law clerk has not done any other work on respondent's case other than listening to the jail calls. Accordingly, there was no evidence in the record that the confidential conversation spread beyond the law clerk to anyone else in the District Attorney's Office, and therefore the trial court erred in granting recusal on this basis.

### 2. *Ruling on Reconsideration*

After granting the motion to reconsider, the trial court again ordered recusal based on Gonzalez's failure to immediately alert opposing counsel the District Attorney's Office had come into possession of the privileged jail call. Respondent relies solely on this basis for recusal on appeal. He concedes that recusal "was not based on the danger that the intern's knowledge would infect the entire office," arguing instead that recusal

9.

was appropriate given "the assigned prosecutor's choice to bury the evidence in regular discovery rather than candidly disclosing the breach."

The trial court's criticism of Gonzalez's handling of the privileged jail call appears to have been based on *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656–657 (*State Fund*), which summarizes the ethical duties of a lawyer who inadvertently receives privileged material:

> "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified. We do, however, hold that whenever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact."

Thus, a party who inadvertently receives privileged material has two obligations: (1) refrain from examining the material further; and (2) notify the party entitled to the privilege. (*State Fund*, *supra*, 70 Cal.App.4th at p. 656.)

Respondent does not allege, and the trial court did not find, that the District Attorney's Office failed to comply with the first prong of the *State Fund* rule. As we explained above, there is no evidence in the record suggesting any member of the District Attorney's Office was privy to the contents of the privileged jail call other than the law clerk, who was effectively walled off from the case. However, on this record, Gonzalez failed to comply with the second prong of the *State Fund* rule by not immediately notifying defense counsel of the breach. Additionally, Gonzalez did not inform defense counsel that the discovered disk containing the jail calls included the privileged call.

10.

Based on these failures, the trial court inferred respondent would not be able to receive a fair trial because it shows members of the office do not believe maintaining attorney-client privilege is "a crucial function" of the criminal justice system. In other words, the trial court concluded that because the District Attorney's Office did not comply with *State Fund* on one occasion, it would not comply with the rules regarding attorney-client privilege going forward.

This is also not the correct legal standard. The trial court based its recusal order on its finding of prosecutorial error[3] rather than a conflict of interest. In this context, a conflict of interest for a prosecutor is " 'an interest in the case extraneous to [his or her] official function.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 376.) Thus, to warrant recusal under section 1424, "[a] defendant must identify, and a court must find, some *conflict of intere*st that renders it unlikely [a] defendant will receive a fair trial." (*Hollywood v. Superior Court* (2008) 43 Cal.4th 721, 735 (*Hollywood*).) Here, the trial court did not identify a conflict of interest, nor articulate how such a conflict would impact the likelihood respondent will receive a fair trial. It merely found the assigned prosecutor committed error, and inferred the prosecutor was thus likely to commit error again in the future.

*Hollywood* illustrates why a finding of prosecutorial error alone is insufficient to justify recusal. There, the assigned prosecutor disclosed case records, including confidential documents, to a film director who wanted to make a movie based on the defendant's case. (*Hollywood*, *supra*, 43 Cal.4th at p. 726.) The defendant had been a fugitive for several years, and the prosecutor claimed he made the disclosures hoping that the ensuing publicity would lead to the defendant's capture. (*Ibid.*) After the defendant

---

**3**      "We observe that the term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

was captured and charged, he filed a recusal motion contending, inter alia, that the prosecutor acted illegally and unethically by disclosing confidential documents. (*Ibid.*)

Following an extensive evidentiary hearing, the trial court found the prosecutor's disclosure of confidential documents was not intentional and at most negligent. (*Hollywood*, *supra*, 43 Cal.4th at pp. 726, 730.) In denying the recusal motion, it reasoned that even if the prosecutor had committed a legal or ethical breach, it did not create a conflict that would deprive the defendant of a fair trial. (*Id.* at pp. 730–731.)

The court of appeal reversed the trial court, reasoning the prosecutor committed misconduct and should have been recused on that basis alone. (*Hollywood*, *supra*, 43 Cal.4th at p. 731.) The Supreme Court disagreed and reversed the court of appeal, concluding that even if the prosecutor committed misconduct by disclosing confidential documents, recusal was only appropriate "if and only if … the disclosure gives rise to a conflict ' " 'so grave as to render it unlikely that [the] defendant will receive fair treatment.' " ' " (*Id.* at p. 730.) Explaining the distinction between a conflict of interest and prosecutorial error for purposes of recusal, *Hollywood* reasoned: "[W]e emphasize that recusal motions are not disciplinary proceedings against the prosecutor. The ultimate focus of the section 1424 inquiry is on protection of the defendant's rights, not whether recusal may be just or unjust for the prosecutor. Thus, in some cases a prosecutor may have committed misconduct but not be subject to recusal because the misconduct does not impair the defendant's right to a fair proceeding; in other cases, a prosecutor may commit no misconduct but nevertheless be subject to recusal because a conflict, through no fault of the prosecutor's, jeopardizes the defendant's rights." (*Id.* at p. 731.)

*Hollywood* clarified that it was not suggesting the prosecutor should escape sanction, and that it found his conduct in turning over his case files without screening for confidential documents "highly inappropriate and disturbing." (*Hollywood*, *supra*, 43 Cal.4th at p. 735.) However, it reiterated that recusal proceedings are not "a free-form vehicle through which to express judicial condemnation of distasteful, or even improper,

12.

prosecutorial actions," and that "section 1424 offers no relief for actions simply because they appear, or are, improper." (*Ibid.*)

Here, like the court of appeal in *Hollywood*, the trial court recused Gonzalez based on its conclusion she committed error. However, as *Hollywood* made clear, prosecutorial error alone is insufficient unless the court finds the error also gives rise to a disqualifying conflict of interest. The trial court made no such finding, instead concluding the error suggests Gonzalez is likely to commit additional prosecutorial error again in the future. This is not a conflict of interest, and therefore is insufficient to support recusal.

The flaw in the trial court's reasoning is further illustrated by *People v. Turner* (1994) 8 Cal.4th 137 (*Turner*), abrogated on another ground by *People v. Griffin* (2004) 33 Cal.4th 536. There, the defendant was retried after his initial murder conviction was reversed by the Supreme Court for *Wheeler*[4] error. (*Turner*, *supra*, 8 Cal.4th at p. 162.) Prior to retrial, the defendant moved to recuse the prosecutor, who was also the prosecutor in the defendant's first trial. (*Ibid.*) The defendant argued the finding of *Wheeler* error suggested the prosecutor will continue to use peremptory challenges to exclude minority jurors, and that he will not be able to receive a fair trial " 'if the jury is not drawn from a representative cross-section of the community.' " (*Turner*, at p. 162.) In concluding the trial court acted within its discretion in denying the motion, the Supreme Court rejected the defendant's argument that the prosecutor's "earlier error meant that the district attorney would not 'exercise [his] discretionary function [in making peremptory challenges] in an evenhanded manner' in this trial. [Citation.] To follow [the] defendant's argument to its logical conclusion, any time a prosecutor makes a mistake at a trial, he will automatically be subject to recusal at any subsequent retrial. We find no basis for this result in section 1424." (*Id.* at p. 163.)

---

**4**      *People v. Wheeler* (1978) 22 Cal.3d 258.

Here, the trial court relied on the same flawed logic rejected by *Turner*. The trial court's conclusion that Gonzalez failed to comply with the *State Fund* rule on one occasion does not mean she will be unable to follow the rules regarding attorney-client privilege in the future. In other words, its conclusion does not " 'evidence a reasonable possibility' " that the District Attorney's Office will not " 'exercise its discretionary function in an evenhanded manner' " going forward, and therefore does not support recusal. (*Turner*, *supra*, 8 Cal.4th at p. 162.)

Based on this record, it is clear the trial court did not apply the appropriate legal standard for recusal, and there is no evidence Gonzalez had a disqualifying conflict of interest. Therefore, the trial court abused its discretion in ordering recusal.[5]

### C.      Recusal of the Tulare County District Attorney's Office

Even if we were to conclude the trial court was within its discretion to recuse Gonzalez, the record is insufficient to support recusal of the entire District Attorney's Office on the same basis. "Recusing an entire prosecutorial office 'is a disfavored remedy that should not be applied unless justified by a substantial reason related to the proper administration of justice.' " (*Melcher v. Superior Court* (2017) 10 Cal.App.5th 160, 167.) It is a "serious step, imposing a substantial burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair trial." (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1156.) Accordingly, "[i]f a defendant seeks to recuse an entire office, the record must demonstrate 'that the conduct of any deputy district attorney assigned to the case, or of the office as a whole, would likely be influenced by the personal interest of the district attorney or an employee.' " (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 373.)

---

[5]    Because we conclude the trial court erred in granting recusal, we need not address appellant's claim that the trial court lacked jurisdiction to consider the motion because criminal proceedings had been suspended pursuant to section 1368 et seq.

The trial court imputed responsibility for Gonzalez's actions to the entire District Attorney's Office based solely on her vague statement that she "consulted with other attorneys" within the office. From this, the trial court concluded "the office thinks that's acceptable" not to comply with the *State Fund* rule. However, there is nothing in the record detailing how many other attorneys she consulted or the identity or rank of those attorneys. It is unclear if she consulted with the elected District Attorney and other supervisors within the office, or merely spoke with a handful of colleagues. There is no evidence of the content of those discussions, or an explanation of how she ultimately reached the conclusion she was not required to alert defense counsel of the privileged jail call. Accordingly, Gonzalez's statements provided an insufficient basis on which to conclude all other attorneys within the office would be influenced by Gonzalez's alleged conflict. Therefore, the record amply demonstrates the order granting recusal of the entire District Attorney's Office was not supported by the evidence.[6]

## DISPOSITION

The trial court's order recusing the Tulare County District Attorney's Office is reversed.

LEVY, Acting P. J.

WE CONCUR:

FRANSON, J.

MEEHAN, J.

---

[6]     On remand, should respondent elect to file another recusal motion, we take no position on how the trial court should rule.